THE STATE, RESPONDENT, v. JACOB GROSS, PROSECUTOR.

Argued June 11, 1921—Decided December 15, 1921.

1. Defendant was convicted for violating a provision of an ordinance of the city of Passaic which provides "that any person who shall in any place of the city of Passaic make, aid or assist in making any improper noise, riot, disturbance or breach of the peace or shall behave in a disorderly manner, or make use of obscene or profane language," shall be subject to a penalty. The violation complained of was that defendant, while a passenger on a train which had stopped at Passaic, had a verbal altercation with the conductor of the train. *Held,* that the railroad coach was not a "place" to which the jurisdiction of the city can be said to extend, and the word "place" in this connection must be held to be equivalent to "public place."

2. The fact that the prosecutor was noisy in asserting his right to have his baggage remain in his seat in a railroad coach, over the objection of the conductor of the train, would not constitute him a disorderly person, under the provisions of the Disorderly act.

On summary review of the judgment of the recorder of Passaic police court.

Before Justice MINTURN by consent.

For the rule, *Charles W. Broadhurst* and *Collins & Corbin.*

For the prosecutor, *Joseph J. Weinberger.*

The opinion of the court was delivered by

MINTURN, J.   The prosecutor of this writ was convicted before the recorder of the city of Passaic for violating section 72 of an ordinance of that city which provides as follows: "That any person, who shall in any place in the city of Passaic, make, aid or assist in making any improper noise, riot, disturbance or breach of the peace, or shall behave in a disorderly manner, or make use of obscene or profane language * * * shall each be liable to a penalty of five dollars for every offence."

The violation complained of was that while he was a passenger on an Erie railroad train, and while the train had stopped at Passaic, he refused to remove his baggage from between the seats to the baggage compartment, at the request of the conductor, as a result of which the prosecutor became noisy and boisterous and the conductor thereupon caused the removal of the prosecutor and his baggage from the car, and turned him and it over to a local police officer.   He was thereafter prosecuted as a disorderly person and convicted of that offence.

Various legal grounds are advanced as a basis for vacating the conviction.   One only I deem fatal to its validity.

The ordinance in question was intended to apply to public places within the city, for the purpose of suppressing dis-

orderly conduct thereon, and while in a limited sense a steam railroad car is a *quasi*-public place as between the state and the railroad, it cannot be reasonably construed as furnishing such a public place within the contemplation of the local legislative body when they passed this ordinance. A similar contention was before this court in *State* v. *Lynch,* 23 *N. J. L. J.* 45, where it was held that a saloon, although a public house in contemplation of law, is not a "public place" within the contemplation of the provisions of the Disorderly act. The words "public places," in this connection, were held to be "such places as are in general use for travel by all citizens, and in which all have at all times an equal right of passage and repassage." Adopting this rule of construction the railroad coach in question was not a "place" to which the jurisdiction of the city can be said to extend, and the word "place," therefore, in this connection must be held to be equivalent to "public place." That this is so is made manifest from the context of the section of the ordinance invoked upon the doctrine of *noscitur a sociis.* Thus, the person charged must not only be in "a place in the city of Passaic," but he must "make, aid or assist in making any improper noise. riot, disturbance or breach of the peace, or shall behave in a disorderly manner or make use of obscene or profane language."

This enumeration of specific acts of misdemeanor connotes, generally speaking, the ordinary offence of disorderly conduct, such as is condemned in our Disorderly act; and, as has been observed, such disorderly conduct to be the subject of public prosecution, must occur in a "public place," within the jurisdiction of the city magistrate and the environment of the city. A traveling car, manifestly, is not such a public place. 32 *Cyc.* 1249, and cases.

The fact that the prosecutor was noisy in asserting his rights can make no difference in the result, for we may from experience judicially notice the fact that the inter-urban railroad train presents no suitable accommodation for one inclined to indulge in either introspection or somnolence. Therefore, an ordinary conversation, in a major key when indulged, as was the case here between a conductor, with a

book of railroad rules in his hand, emphasizing his duty, and a protesting commuter with an innocuous bag, the owner of which attempted to vindicate in Yiddish-English the rights of the American traveling public, might be the means of provoking an innocent mental diversion, for the benefit of the curious passengers, but could hardly be said to evolve the serious accusation of disorderly conduct in a public place, within the meaning of the ordinance. A discussion in an elevated key on a railway carriage, whether it concern a bag, or the suspected contents of a bag, is not an unusual episode in every-day American railway life; nor can it be said to be without its compensating and exhilarating effect upon the general body of passengers, so long as it does not assume the intolerant form of vulgarity, or obscenity, and thus warrant the ejection from the train of the malodorous disputant.

The fact, of course, is that the voluminous resonance of a conversation cannot be utilized as a standard to gauge either its criminality or its literary value, and yet debates in the halls of legislation, in the courts of justice, not to speak of fulminations from the pulpit, are often measured to a great degree by the volume of vocalization and the density of lung power behind them.

If precedent were invoked from the classics, we have it in

> " 'Sweet Auburn;' where in fancy we hear the
> Loud laugh that spoke the vacant mind;"

And Goldsmith's pen picture has placed the vociferous school master among the immortals, whose

> "Words of learned length and thundering sound
> Amazed the gazing rustics ranged around."

All of this, and more, is familiar experience on the railway train and thus far has escaped the proscription of the authorities.

In *Mullen* v. *State,* 67 *N. J. L.* 451, the prosecutor in asserting his rights at a school meeting became, in the language of this court, "quite noisy and excited." His conception of public duty led him to indulge in what the complainant

called "loud language," and for this he was prosecuted under the provisions of the Disorderly act, which prohibits in "public places" the use of "loud, offensive or indecent language." There was no proof of the indecency or offensiveness of his speech, and this court held that the uttering of "loud" language was not enough to sustain the complaint.

These considerations, without reference to the other objections presented, lead me to conclude that the judgment of conviction should be vacated, and such will be the order.